IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| D. EARL McCUTCHEON,<br>      Plaintiff, | * |
| v. | *<br>CIVIL ACTION NO. RWT-09-2240 |
| KATHLEEN S. GREEN,<br>      Defendant. | *<br>* |

******

## **MEMORANDUM OPINION**

On August 21, 2009, the Court received Plaintiff D. Earl McCutcheon's civil rights complaint seeking compensatory damages. Paper No. 1. McCutcheon, an inmate then incarcerated at the Eastern Correctional Institution ("ECI"), claimed that he was assaulted by another inmate, and that Defendant Warden Kathleen S. Green failed to protect him from the assault and denied him proper medical care for his injuries. Defendant Green has filed a Motion to Dismiss, or in the Alternative for Summary Judgment. Paper No. 9. Plaintiff has filed an opposition. Paper Nos. 11 and 12. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, the dispositive motion filed by Defendant, treated as a motion for summary judgment, will be granted.

**Background**

McCutcheon alleges that on December 8, 2008, while in the recreation day room at the Eastern Correctional Institution, he was stabbed in the head, face and back. He states that independent medical providers and medical providers at ECI have advised him that he will need plastic surgery for the scars on his face but that Green refuses to pay for the surgery. Plaintiff further alleges that an unidentified correctional officer was not at his duty station, in violation of Division of Correction directives, at the time of the attack. Paper No. 1.

The uncontroverted records demonstrate that at the time of the assault, Sergeant Erin Evans

was in charge of the housing unit and stationed in the control center. She observed a group of inmates huddled together in the day room. Suspicious, she radioed Correctional Officer John Earhart and directed him to report immediately to the dayroom to investigate. Evans observed the inmates in the day room disperse when Earhart arrived at the dayroom; Evans unlocked its door from the control center. Plaintiff, bleeding from wounds to the face and upper body, stepped out of the day room and was escorted to the medical department for evaluation and treatment. Paper No. 9, Ex. 1, p. 6, 28, 30. Plaintiff indicated that his cellmate, Antonio Green, had instigated and participated in the attack, due to Plaintiff's snoring. Id., p. 7. Prior to the attack, Plaintiff had not reported any threats to him by Green or indicated he feared for his safety.[1] Id., p. 4. Plaintiff declined to press charges against Green. Id., p. 7, 44.

Plaintiff was seen by the medical department at ECI on the day of the incident. He was then transported via ambulance to Peninsula Regional Medical Center where he received more than 100 stitches to his face and head. He received continued care at ECI for his lacerations. Paper No. 9, Ex. B. Ultimately, it appears that the Medical Director declined Plaintiff's request for plastic surgery, finding that it was not medically necessary. Paper No. 11, Attachment, p. 17.

Plaintiff did not file an administrative remedy request regarding the assault. Paper No. 1, Paper No. 9, Ex. A. On September 16, 2009, Plaintiff filed an administrative remedy request concerning the denial of his request for plastic surgery. Paper No. 11, Attachment, p. 17.

**Standard of Review**

Fed. R. Civ. P. 56(c) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure

---

[1] Sometime prior to the incident Plaintiff spoke with Sergeant Smitty about being moved to a different cell. There is no indication as to the basis for this inquiry, and no indication that Plaintiff advised the Sergeant that he was in fear for his safety. Rather, it appears he made an informal inquiry, was advised that the normal process required he be assigned to his cell for six months before requesting a move, and Plaintiff made no formal efforts to have his cell changed or alert any correctional employees that he feared for his safety. Paper No. 9, Ex. A, Paper Nos. 11, and 12.

2

> materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

## Analysis

**Failure to Exhaust Administrative Remedies**

The court must first examine Defendant's assertion that Plaintiff's claim should be dismissed in its entirety due to his failure to exhaust available administrative remedies. The Prison Litigation Reform Act ("PLRA") generally requires a prisoner Plaintiff to exhaust administrative remedies

3

before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations concerning the assault and the failure to protect him from same. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. See Chase v. Peay, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. Id. at 530; Booth v. Churner, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); Thomas v. Woolum, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review); see e.g. Gibbs v. Bureau of Prisons, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). See Chase, 286 F. Supp. 2d at 529 no. 10; see also Md. Code Ann. Corr. Serv. §§ 10-201 to 210.

Plaintiff indicates in his complaint that he did not file an administrative remedy procedure request concerning the failure to protect.[2] Paper No. 1. Defendant confirms that Plaintiff filed no administrative remedies concerning that claim. Paper No. 9. There is no evidence that in this case Plaintiff sought and was denied an administrative remedy form for the Complaints alleged here. Nor is there an allegation or evidence that he completed an administrative remedy request and submitted it to prison staff, but the request was never acted upon or delivered to the proper official. Plaintiff may not unilaterally decide to sidestep the administrative process. Unlike the circumstances in Taylor v. Barnett, 105 F. Supp. 483, 486 (E.D. Va. 2000), prison officials do not appear to have frustrated Plaintiff's attempts at exhaustion; instead, Plaintiff through his own actions failed to initiate and pursue his administrative remedies. Plaintiff's claims regarding the assault and failure to protect are subject to dismissal for failure to exhaust administrative remedies.

**Medical Claim**

To the extent Plaintiff claims Defendant Green denied him access to medical care, his claim shall be denied. Warden Green takes no part in making medical decisions or judgment regarding

---

[2] Plaintiff has provided a copy of an administrative remedy request he filed regarding the denial of plastic surgery. Paper No. 11, p. 17. Complaints regarding medical care do not need to proceed through the administrative remedy process as those complaints are against contractors to the Division of Correction rather than employees. Plaintiff has not, however, named any medical providers as Defendants in this case. Accordingly, the court shall not consider any claim against

5

inmates. All medical decisions are made by employees of Correctional Medical Services ("CMS"), the private contractor which provides health care to ECI inmates. Green has no authority over CMS employees regarding medical treatment. Paper No. 9, Ex. B. Moreover, Green is permitted to rely on the professional judgment of health care providers employed to care for inmates. See <u>Miltier v. Beorn</u>, 896 F.2d 848, 854-55 (4th Cir. 1990). As it does not appear that the Warden affirmatively prevented Plaintiff from receiving medical care, in any way interfered with Plaintiff's medical treatment, or was in any manner deliberately indifferent to Plaintiff's needs, the Warden's dispositive motion shall be granted.

## Conclusion

Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment is granted. Judgment shall be entered in favor of Defendant and against Plaintiff. A separate order follows.

Date: May 13, 2010

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

---

unnamed medical providers for denial of medical care.